## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ANDREW J. SPATH, individually
and in his capacity as Trustee of the
98 BARKER STREET REALTY
TRUST,

        *Plaintiff,*

*vs.*

GEORGE H. VERRY, ARTHUR
EGERTON and SABRINA
CHILCOTT,

        *Defendants.*

Case No.: 1:24-cv-11190

## COMPLAINT FOR INJUNCTIVE RELIEF, COMPENSATORY DAMAGES, PUNITIVE DAMAGES AND ATTORNEYS' FEES

Plaintiff Andrew J. Spath, in his individual capacity and in his capacity as Trustee of the 98 Barker Street Realty Trust, for his Complaint against the Defendants in this action, hereby states and alleges as follows:

### Summary

1.      Over the last year and a half, Plaintiff has been embroiled in a dispute with various representatives and agencies of the Town of Pembroke, Massachusetts, concerning Plaintiff's maintenance and use of 70 acres of vacant land as a tree farm. The Defendants in this action are all officials of the Town of Pembroke who have been actively opposing Plaintiff's plans and work on his property.  Unsatisfied with the limits of due process and law, the Defendants took it upon themselves to repeatedly

trespass on Plaintiff's property without legal right or authority and to secretly record statements made by the Plaintiff while he was being interrogated by Town officials, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution and provisions of State law. Plaintiff seeks, by way of this lawsuit, to put an end to this unlawful and invasive pattern of conduct and to assure that these Town officials will conduct themselves in the future with due regard for Plaintiff's constitutional and statutory rights.

## **Parties**

2.      Plaintiff Andrew J. Spath (herein "Spath") is an individual who resides at 122 Stockbridge Road, Scituate, Plymouth County, Massachusetts 02066. Spath is, and has been at all relevant times, the sole Trustee of the 98 Barker Street Realty Trust (herein the "Trust"), which has its principal place of business at 122 Stockbridge Road, Scituate, Plymouth County, Massachusetts 02066.

3.      Defendant George H. Verry ("Verry") is an individual who resides at 179 Monroe Street, Pembroke, Massachusetts 02359. At all times relevant to this Complaint, Verry has been the Building Inspector and Zoning Enforcement Officer for the Town of Pembroke, Massachusetts.

4.      Defendant Arthur Egerton ("Egerton") is an individual who resides at 413 Center Street in Pembroke, Massachusetts 02359. At all times relevant to this Complaint, Egerton has been a Member and Chairman of the Conservation Commission of the Town of Pembroke, Massachusetts.

5.     Defendant Sabrina Chilcott ("Chilcott") is an individual who resides at 66 Four Winds Drive, Pembroke, Massachusetts 02359.  At all times relevant to this Complaint, Chilcott has been the Assistant Town Manager of the Town of Pembroke, Massachusetts.

## Jurisdiction and Venue

6.     This Court has original jurisdiction over the claims and matters alleged in this Complaint pursuant to 28 U.S.C. § 1331 and § 1343 because this action arises under the Constitution of the United States of America and 42 U.S.C. §§ 1983 and 1988.  Plaintiff also asserts a number of statutory and common law claims arising under the law of the Commonwealth of Massachusetts. This Court has supplemental jurisdiction over these state claims and the Defendants pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this Court under 28 U.S.C. § 1391 because all the parties to this action reside in the Commonwealth of Massachusetts and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Commonwealth of Massachusetts.

## Allegations Applicable To All Counts

## 1.     Spath's acquisition and use of vacant property in Pembroke.

8.     Plaintiff Spath, in his capacity as the Trustee of 98 Barker Street Realty Trust, is the owner of two parcels of adjoining vacant land located at 98 Barker Street and 409 Washington Street in the Town of Pembroke, Massachusetts.

9.     The smaller parcel, 98 Barker Street, was purchased by Spath on December 18, 2020.  A few days later, Spath created the 98 Barker Street Realty

Trust and transferred title to this lot to the Trust, pursuant to a deed recorded with the Plymouth County Registry of Deeds in Book 54053 at Page 210. The Trust held title to this property, and did not develop or significantly alter it, for the next year and a half.

10. In 2022, Spath became aware that the larger, abutting parcel behind 98 Barker Street was for sale, *i.e.*, the approximately 70 acre parcel then known as 409 Washington Street. This parcel had been operated by the prior owner as Forest Lands, pursuant to Chapter 61 of the Massachusetts General Laws, since at least 1985. The prior owner had harvested forest products from this property pursuant to a Forest Management Plan and had planted tree seedlings for future harvesting. Spath wanted to maintain this property for these purposes and decided to include 98 Barker Street as a part of this forestry and tree farming operation.

11. On October 26, 2022, the Trust purchased 409 Washington Street from its prior owner, Kenneth E. Roberts, Trustee of the Kenneth E. Roberts Trust. *See* Deed recorded with the Plymouth County Registry of Deeds in Book 57359 at Page 213. Spath promptly initiated efforts to renew and continue the registration of this land as Forest Land under M.G.L. ch. 61 and submitted an updated Forest Management Plan to the Massachusetts Department of Conservation and Recreation.

12. Meanwhile, Spath began to prepare both 98 Barker Street and 409 Washington Street for farming of forest products. Spath maintained and renewed the existing roadway on the property which ran through 98 Barker Street up to the highlands on 409 Washington Street. Spath also installed berms on 98 Barker Street

- 4 -

for the privacy of both his family and the neighbors.  Spath placed a wood cutting machine on 98 Barker Street to prepare for converting harvested trees into residential firewood and set aside an area on 98 Barker Street for storage of logs prior to cutting into firewood.  He also set aside an area on 98 Barker Street which he intended to use for the display and sale of firewood, once the products were ready for sale.

13.    On the larger parcel, 409 Washington Street, Spath harvested trees from two areas in the uplands of the parcel. He also planted Christmas tree seedlings in the uplands areas which had been cleared by the previous owner.  He also purchased $2,100 worth of Christmas tree and fruit tree seedlings for planting in the other cleared area.

14.    The uses made of the two lots by Spath and the Trust were fully permitted uses under the Town's Zoning By-Laws.

15.    When Spath first acquired 98 Barker Street in 2020, he promptly posted "No Trespassing" signs on the property at the entrance from Barker Street and at other locations.  These signs remained in place after the Trust took title to 98 Barker Street and the signs remain in place to the date of filing of this Complaint.  When the Trust purchased 409 Washington Street in 2022, Spath had numerous "No Trespassing" signs posted on this vacant property at various locations to insure that any persons intending to enter the property would be alerted that they were not allowed to enter without the express permission of the owner.

**2.    Defendant Verry trespasses on the Trust's property.**

16.    Despite the posting of the property, on or about November 30, 2022, Defendant George H. Verry, the Town's Building Inspector, made an entry onto the Trust's property without any prior notice or warning, and without any permission from the Trust, Mr. Spath or any other person.  Verry drove his vehicle onto and across 98 Barker Street, right past several "No Trespassing" signs which were clearly visible at the time.  Verry then parked on 98 Barker Street and walked up into the cleared area near the middle of 409 Washington Street, walking past several more, clearly visible "No Trespassing" signs.

17.    Verry inspected both properties during this entry, without notifying anyone who was then present at the property. After his inspection, Verry left his business card in the windshield wiper of one of Spath's workers who was present at the property.  Verry's card identified him as the Building Inspector for the Town of Pembroke and provided a Town Hall address and telephone number. Verry subsequently called Spath and when Spath called Verry back, Verry admitted that he had entered and inspected the Trust's property without prior notice, permission or a warrant.

18.    Verry's entry on the Trust's property was unlawful and he knew it was unlawful at the time he made the entry.  In fact, in January 2020, Town Counsel to the Town of Pembroke had published a guide for the Massachusetts Municipal Association which read in part as follows:

"We are often asked to render opinions regarding the authority of administrative agents, such as health agents, building inspectors,

- 6 -

conservation commission agents, and animal control officers, to enter private property for purposes of conducting inspections. Administrative agents may enter private property to conduct inspections only if: (1) the property owner consents to the entry; (2) an administrative search warrant is issued by a court; or (3) there is an emergency situation requiring immediate entry.

"The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. Camara v. Municipal Court of the City and County of San Francisco, 87 S.Ct. 1727, 1730 (1967). To further this purpose, the Supreme Court has consistently held that government officials may not enter private property without the permission of the occupant unless a neutral magistrate issues a warrant based upon probable cause. Camara, 87 S.Ct. at 1731, and cases cited. While this requirement is typically applied to searches conducted by the police, in 1967 the Supreme Court held that searches by local administrative officials violate the Fourth Amendment when conducted without an administrative search warrant. Camara, 87 S.Ct. at 1733. The Massachusetts Appeals Court has followed the Supreme Court's precedent in this regard and has held that administrative officials are required to obtain warrants prior to conducting inspections of private property without the owner's consent. City of Boston v. Ditson, 4 Mass.App.Ct. 323 (1976). Further, an administrative inspection that exceeds the limits set forth in the authorizing statute and case law is both a statutory and a constitutional violation. Commonwealth v. O'Donnell, 92 Mass.App.Ct. 262 (2017) (finding town exceeded scope of search permissible under administrative inspection warrant by extending search to areas unrelated to suspected code violations).

"Therefore, in all but the most extreme circumstances, administrative agents should attempt to procure consent or a warrant before conducting a search of private property."

KP Law eUpdate entitled "Entering Private Property to Conduct Inspection" (available at https://k-plaw.com/wp-content/uploads/2020/01/KP-709971-v1-MMA_Authority_of_Administrative_Agents_to_Enter_Private_Property.pdf (last viewed 04/25/2024)).

19.    Based upon this illegal search, on March 23, 2023, Defendant Verry issued an "Order To Cease And Desist All Work" to the Trust and Spath which by its terms prohibited Spath and the Trust from doing any more work on their property.

- 7 -

**3.     Defendant Egerton trespasses on and over the Trust's property.**

20.     On or shortly after May 1, 2023,  Spath was served with a second Cease and Desist Order, this time issued by the Conservation Commission of the Town of Pembroke.  This "Enforcement Order" claimed that some of the work Spath had done on the property had disturbed wetlands and buffer zone areas, in violation of both the Massachusetts Wetlands Protection Act, Mass. Gen. Laws ch. 131 § 40, and the Town's own Wetlands Bylaw, even though the work actually done by Spath - since it was done in connection with agricultural activities - was exempt from the Wetlands regulations under applicable law.

21.     The Enforcement Order ordered Spath to appear before the Conservation Commission at its next meeting on May 4, 2023, which he did.  At that meeting, all the Members of the Conservation Commission voted in favor of confirming and ratifying the May 1, 2023 Enforcement Order against Spath.

22.     Spath and his legal counsel subsequently appeared before the Pembroke Conservation Commission numerous times over the next 11 months to obtain approval of a Restoration Plan to restore any wetlands Spath had disturbed.  Spath and the Trust, in an effort to cooperate with the Town officials, also submitted a Notice of Intent to maintain and improve the old roadway on the site (even though these activities were exempt).  On March 17, 2024, the Conservation Commission voted to deny Spath's NOI.

23.     During this time period, when Spath and his legal counsel were repeatedly appearing before the Conservation Commission, Defendant Arthur

Egerton was the Chairman of the Pembroke Conservation Commission. Egerton presided at all or most of the Conservation Commission meetings which considered Spath's Restoration Plan and his NOI.

24.     During this time period, Egerton's full time job was, at all times relevant to this Complaint, as the "Chief Pilot" of a business he called "AEronaut Drone Services." In this business, Egerton operated and piloted remote drone aircraft designed to take photographs and videos of the areas over which the drone was flown. Egerton promotes this business to local real estate brokers and others. Egerton claimed to hold a Commercial License for the flying and operation of a drone aircraft. In one of his promotional posts, Egerton stated: "Available to shoot and edit videos as well as distribute them via YouTube or other internet sites."

25.     On May 4, 2023, the same day that Spath was first hauled before the Conservation Commission and the day the Enforcement Order was ratified by the Pembroke Conservation Commission, someone posted on YouTube a drone video of the Trust's property at 98 Barker Street and 409 Washington Street. This drone video is still posted at https://youtu.be/Xj05dp6BoPA. The video says it was posted by "John Smith," but there is no other identifying information provided.

26.     During a subsequent meeting of the Pembroke Conservation Commission, which was chaired by Defendant Egerton, one of the Members of the Conservation Commission, speaking directly to Egerton, said that "someone" should fly another drone over the Trust's property to confirm that no additional work was

being done on the site.  Within just a few days, another three drone videos were posted on YouTube.

27.    Finally, at a meeting of the Pembroke Conservation Commission held on March 7, 2024, and in response to a direct statement by Spath, Defendant Egerton admitted that he had flown a drone over the 98 Barker Street and 409 Washington Street properties and videotaped the properties and the activities going on at the properties.

28.    Defendant Egerton did not give Spath or the Trust any notice or warning that he intended to fly a drone aircraft over or surveil their properties and did not seek or obtain any permission for this surveillance.

29.    At the March 7, 2024 Conservation Commission meeting, Egerton indicated that he had been reprimanded by the Town Manager for this activity and was told that he should not have done it.

30.    Egerton's entry on and over the Trust's property with his remotely-piloted drone, and his surveillance of the property and the people on the property, was unlawful.

31.    Despite demand, Egerton and the Town have, to date, refused to produce a copy of Egerton's drone video to Spath or his counsel.

**4.    <u>Defendant Chilcott secretly and illegally tape records Spath.</u>**

32.    After having trespassed on and surveilled the Trust's property without legal authority in November 2022, on April 20, 2023, Defendant Verry decided to apply for an Administrative Warrant to enter the Trust's property once again.  In the

Affidavit he submitted to support his application for the Warrant, Verry relied upon his observations of the property in November 2022, when he illegally trespassed on Spath's property without permission. In the *ex parte* proceeding for the Administrative Warrant, the Magistrate issued a Warrant for the immediate inspection of 98 Barker Street and 409 Washington Street, based upon the illegally obtained evidence from Defendant Verry.

33. Even though Verry and Town Counsel were by then aware that Spath and the Trust were represented by counsel, Verry and the Town failed to notify Spath's counsel of this application or the issuance of the Administrative Warrant on April 20, 2023. Instead, Verry - accompanied by several other Town officials - drove onto and entered the Trust's property on the morning of April 24, 2023, without any prior notice or warning to Spath or his attorney.

34. When Spath learned of this unannounced entry, he immediately drove over to the property where he pulled up to a group of Town officials which included Defendant Verry, Joseph Stack, a Town Building Inspector, Melissa Joyce, a staff employee of the Pembroke Conservation Commission, and Defendant Chilcott, the Assistant Town Manager. Unknown to Spath, immediately prior to Spath's arrival, Defendant Chilcott had been videotaping the scene of the inspection. Defendant Chilcott was videotaping with the sound recording on her camera turned on, so all statements made by the people around her were recorded.

35. Defendant Chilcott continued to record with her camera as Spath drove up to the group in his pickup truck. As Spath approached, however, Chilcott directed

- 11 -

her video camera toward the ground so that the only thing that can be seen on the videotape are Chilcott's feet and legs and the ground. Chilcott did this so that Spath would not know or realize that the camera was operating and recording Spath's statements. In fact, during the entire time that Spath spoke with the other Town officials, Chilcott secretly and intentionally recorded Spath's voice and all the statements he made. This surveillance and secret recording was unlawful.

## CLAIMS FOR RELIEF

### COUNT I

### (42 U.S.C §1983 - Violation of the 4th Amendment of the United States Constitution by Defendant George H. Verry)

36. Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in all the preceding paragraphs of this Complaint.

37. Defendant George H. Verry, while acting under the color of law, violated Plaintiff's constitutional rights by entering and inspecting his property at 98 Barker Street and 409 Washington Street, Pembroke, without a warrant and without any notice or permission.

38. Defendant Verry's actions violated the constitutional rights guaranteed to the Plaintiff by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

39. Defendant Verry's actions were not taken in good-faith and were in violation of clearly established law.

40.    Defendant Verry's actions were taken with knowledge that Verry had no right to trespass on Spath's property and with reckless or callous indifference to Spath's federally protected rights to be free from unreasonable searches.

41.    When Defendant Verry entered Spath's property in November 2022, without permission or right, Verry intended to violate Spath's federally protected constitutional rights.

42.    In this Count, Defendant Verry is being sued in his individual capacity and is subject to personal liability.  *See Powell v. Alexander*, 391 F.3d 1, 21-22 (2004).

43.    As a direct and proximate result of Defendant Verry's unreasonable and unlawful actions, the Plaintiff has suffered damages.

44.    Because Defendant Verry's actions "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

## COUNT II

### (42 U.S.C §1983 - Violation of the 4th Amendment of the United States Constitution by Defendant Arthur Egerton)

45.    Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in all the preceding paragraphs of this Complaint.

46.    Defendant Arthur Egerton, while acting under the color of law, violated Plaintiff's constitutional rights by entering and surveilling his property at 98 Barker

Street and 409 Washington Street, Pembroke, and the airspace above, without a warrant and without any notice or permission.

47.    Defendant Egerton's actions violated the constitutional rights guaranteed to the Plaintiff by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

48.    Defendant Egerton's actions were not taken in good-faith and were in violation of clearly established law.

49.    Defendant Egerton's actions were taken with knowledge that Egerton had no right to trespass on or over Spath's property, and taken with reckless or callous indifference to Spath's federally protected rights to be free from unreasonable searches.

50.    When Defendant Egerton entered on and over Spath's property in November 2022, without permission or right, Egerton intended to violate Spath's federally protected constitutional rights.

51.    In this Count, Defendant Egerton is being sued in his individual capacity and is subject to personal liability. *See Powell v. Alexander*, 391 F.3d 1, 21-22 (2004).

52.    As a direct and proximate result of Defendant Egerton's unreasonable and unlawful actions, the Plaintiff has suffered damages.

53.     Because Defendant Egerton's actions "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

## COUNT III

### (42 U.S.C §1983 - Violation of the 4th Amendment of the United States Constitution by Defendant Sabrina Chilcott)

54.     Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in all the preceding paragraphs of this Complaint.

55.     Defendant Sabrina Chilcott, while acting under the color of law, violated Plaintiff's constitutional rights by secretly tape recording his statements and surveilling him while he was on his property at 98 Barker Street and 409 Washington Street, Pembroke, without a warrant and without any notice or permission.

56.     Defendant Chilcott's actions violated the constitutional rights guaranteed to the Plaintiff by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

57.     Defendant Chilcott's actions were not taken in good-faith and were in violation of clearly established law.

58.     Defendant Chilcott's actions were taken with knowledge that Chilcott had no right to secretly record Spath's statements and with reckless or callous indifference to Spath's federally protected rights to be free from unreasonable searches.

59.    When Defendant Chilcott entered Spath's property and secretly recorded his interrogation by Town officials, without Spath's knowledge or permission, Chilcott intended to violate Spath's federally protected constitutional rights.

60.    In this Count, Defendant Chilcott is being sued in her individual capacity and is subject to personal liability. *See Powell v. Alexander*, 391 F.3d 1, 21-22 (2004).

61.    As a direct and proximate result of Defendant Chilcott's unreasonable and unlawful actions, the Plaintiff has suffered damages.

62.    Because Defendant Chilcott's actions "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law.

## COUNT IV

### (Trespass against Defendant Verry)

63.    Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in Paragraph Nos. 1 through 35 inclusive of this Complaint.

64.    As alleged above, on or about November 30, 2022, Defendant Verry intentionally and illegally entered upon the property owned by Spath as Trustee of the Trust at 98 Barker Street and 409 Washington Street, inspected the properties and remained on the properties for a significant period of time.

65.   At the time of this entry and occupation, the Trust had actual and lawful possession of the property that Verry entered and inspected.

66.   Defendant Verry trespassed on the property owned by the Trust, intentionally and without legal right.

67.   As a direct and proximate result of Defendant Verry's trespass, Plaintiff has suffered and sustained injury, damage and loss.

## COUNT V

## (Trespass against Defendant Egerton)

68.   Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in Paragraph Nos. 1 through 35 inclusive of this Complaint.

69.   As alleged above, at some time in 2023, Defendant Egerton trespassed on and over the Plaintiff's property at 98 Barker Street and 409 Washington Street by flying a remote drone aircraft at a low altitude over the Plaintiff's property. Egerton used this access to conduct surveillance of the property and he videotaped the property and the people then present on the property.

70.   Upon information and belief, Egerton showed his video of the Plaintiff's property to others and may have posted his video on the internet for others to view.

71.   At the time of this entry and videotaping, the Trust had actual and lawful possession of the property that Egerton entered, inspected and videotaped.

72.   Defendant Egerton trespassed on the Plaintiff's property intentionally and without legal right.

73.    As a direct and proximate result of Defendant Egerton's trespass, Plaintiff has suffered and sustained injury, damage and loss.

## COUNT VI

### (Violation of Mass. Wiretapping Act, G.L. ch. 272 § 99 by Chilcott)

74.    Plaintiff repeats and realleges, and incorporates herein by this reference, all of the allegations contained in Paragraph Nos. 1 through 29 inclusive of this Complaint.

75.    As alleged above, on or about April 24, 2023, Defendant Chilcott secretly tape recorded a conversation that took place during an inspection of the Plaintiff's property between Plaintiff and other representatives of the Town of Pembroke.

76.    This secret tape recording was without Plaintiff's knowledge or permission and Defendant Chilcott took intentional acts to conceal the tape recording from Plaintiff.

77.    This secret tape recording was in direct violation of the provisions of the Massachusetts Wiretapping Act, Mass. Gen. Laws ch. 272 § 99.

78.    Despite demand, Defendant Chilcott has not returned to Plaintiff this secret recording nor has Chilcott taken necessary action to purge this illegal recording from the records of the Town of Pembroke.

79.    Plaintiff is an aggrieved person within the meaning of Mass. Gen. Laws ch. 272 § 99(Q) and Defendant Chilcott is a person who intercepted, disclosed and used a recording of Plaintiff's communications without his knowledge and consent and in violation of Chapter 272 § 99.

80.     Under Mass. Gen. Laws ch. 272 § 99(Q), Plaintiff is entitled to recovery of: (a) $100 per day from the date of Defendant Chilcott's illegal recording through to the date of final judgment; (b) punitive damages; and (c) reasonable attorney's fees and other litigation disbursements reasonably incurred by Plaintiff.

## **<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Plaintiff demands the following relief:

A.     On Count I:

(1)     That the Court issue a permanent injunction restraining the Defendant Verry, and all those in active cooperation with him, from entering upon the Plaintiff's property without a duly issued lawful warrant, issued by a Court of competent jurisdiction after Plaintiff is given notice and an opportunity to be heard;

(2)     That the Court enter judgment for Plaintiff and against Defendant Verry for compensatory damages caused by Verry's wrongful and illegal conduct;

(3)     That the Court award Plaintiff punitive damages as against Defendant Verry pursuant to 42 U.S.C. § 1983, and any other applicable laws or statutes, in an amount sufficient to punish Defendant Verry for his intentional and willful violation and disregard of Plaintiff's constitutional rights as alleged herein and to assure that Defendant Verry will not engage in such unlawful conduct in the future; and

(4)     That the Court award Plaintiff his reasonable attorneys' fees under 42 U.S.C. § 1988 and all taxable costs of this action.

B.    On Count II:

(1)    That the Court issue a permanent injunction restraining the Defendant Egerton, and all those in active cooperation with him, from entering upon the Plaintiff's property by flying any drone or remotely controlled aircraft over the Plaintiff's property without a duly issued lawful warrant, issued by a Court of competent jurisdiction after Plaintiff is given notice and an opportunity to be heard;

(2)    That the Court enter judgment for Plaintiff and against Defendant Egerton for compensatory damages caused by Egerton's wrongful and illegal conduct;

(3)    That the Court award Plaintiff punitive damages as against Defendant Egerton pursuant to 42 U.S.C. § 1983, and any other applicable laws or statutes, in an amount sufficient to punish Defendant Egerton for his intentional and willful violation and disregard of Plaintiff's constitutional rights as alleged herein and to assure that Defendant Egerton will not engage in such unlawful conduct in the future; and

(4)    That the Court award Plaintiff his reasonable attorneys' fees under 42 U.S.C. § 1988 and all taxable costs of this action.

C.    On Count III:

(1)    That the Court issue a permanent injunction restraining the Defendant Chilcott, and all those in active cooperation with her, from recording any statements made by Plaintiff without his full knowledge and express consent, absent a duly issued lawful warrant, issued by a Court of competent jurisdiction after Plaintiff is given notice and an opportunity to be heard;

(2)    That the Court enter judgment for Plaintiff and against Defendant Chilcott for compensatory damages caused by Chilcott's wrongful and illegal conduct;

(3)    That the Court award Plaintiff punitive damages as against Defendant Chilcott pursuant to 42 U.S.C. § 1983, and any other applicable laws or statutes, in an amount sufficient to punish Defendant Chilcott for her intentional and willful violation and disregard of Plaintiff's constitutional rights as alleged herein and to assure that Defendant Chilcott will not engage in such unlawful conduct in the future; and

(4)    That the Court award Plaintiff his reasonable attorneys' fees under 42 U.S.C. § 1988 and all taxable costs of this action.

D.    On Count IV, that the Court enter judgment against Defendant George Verry and in favor of Plaintiff in an amount equal to the damages and losses suffered or incurred by Plaintiff as a result of Defendant Verry's trespass.

E.    On Count V, that the Court enter judgment against Defendant Arthur Egerton and in favor of Plaintiff in an amount equal to the damages and losses suffered or incurred by Plaintiff as a result of Defendant Egerton's trespass.

F.    On Count VI, that the Court enter judgment against Defendant Sabrina Chilcott and in favor of Plaintiff in an amount equal to:

(1)    $100 per day from the date that Chilcott secretly and illegally recorded Plaintiff's statements through to the date of judgment as provided in Mass. Gen. Laws ch. 272 § 99(Q)(1);

(2)    punitive damages to the fullest extent permitted by law; and

- 21 -

(3)    an amount sufficient to reimburse Plaintiff for his reasonable legal fees and costs incurred in bringing these claims against Defendant Chilcott.

G.    On all Counts, that the Court award Plaintiff interest, costs, attorneys fees and such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and counts asserted in the Complaint and all defenses asserted thereto.

> **ANDREW J. SPATH, individually and in his capacity as Trustee of the 98 BARKER STREET REALTY TRUST,**
> Plaintiff,
> By his attorney,
>
>
> */s/ Stephen W. Rider*
> _____
> Stephen W. Rider, Esq., BBO # 419820
> Stephen W. Rider, P.C.
> 350 Lincoln Street – Suite 2400
> Hingham, MA 02043
> Tel:  781-740-1289
> Fax:  781-207-9160
> Email: stephen.rider@swrpc.com

Date:  May 3, 2024